UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL A. AITKENS,

    Petitioner,

v.

RON DAVIS, Warden,

    Respondent.

Case No. 14-cv-03759-HSG (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

Before the Court is the above-titled petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 by petitioner Daniel A. Aitkens, challenging the validity of his state court sentence. Respondent has filed an answer to the petition.[1] Petitioner has filed a traverse. For the reasons set forth below, the petition is denied.

## I. BACKGROUND

By information filed April 30, 2002, the Napa County District Attorney charged petitioner with aggravated assault, Cal. Penal Code § 245(a)(1). The information further alleged, as sentencing enhancements, one prior strike, *id.* at § 667(b)-(i), and one prior serious felony conviction, *id.* at § 667(a)(1). The information also alleged that, during the course of the assault, petitioner personally inflicted great bodily injury, another sentencing enhancement. *See* Respondent's Exhibit C at 31-33 (Clerk's Transcript, hereinafter referred to as "CT"). The offense occurred while petitioner was in custody in the Napa County Department of Corrections, awaiting

---

[1] Petitioner initially named Kevin R. Chappell, former warden of San Quentin State Prison—where petitioner is incarcerated—as the respondent in this action. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ron Davis, the current warden of San Quentin State Prison, is hereby SUBSTITUTED as respondent in place of petitioner's prior custodian.

1    sentencing on a separate Napa County conviction for attempted murder.

2    On January 17, 2003, pursuant to a negotiated disposition, petitioner pleaded no contest as
3    charged and admitted all enhancements and prior conviction allegations. CT at 87-89.

4    On February 25, 2003, the trial court sentenced petitioner to eight years in state prison. CT
5    at 100-01, 116-17. In the instant petition, petitioner claims the sentence was to run consecutive to
6    a separate sentence for an arson conviction in Placer County. Respondent contends the sentence
7    was to run consecutive to *both* the Placer County arson conviction and the Napa County
8    conviction for attempted murder.

9    On August 8, 2003, the California Court of Appeal affirmed the judgment following
10   review pursuant to *People v. Wende*, 25 Cal. 3d 436 (1979). CT at 139-42.

11   On April 8, 2011, the California Department of Corrections and Rehabilitation reported
12   that the Placer County Superior Court had dismissed the Placer County arson conviction and asked
13   the trial court to consider issuing a modified abstract of judgment. CT at 156.

14   Petitioner thereafter filed a motion in the trial court to withdraw his plea. On September
15   23, 2011, the trial court denied petitioner's motion and ordered the clerk to issue a modified
16   abstract of judgment. CT at 167-69.

17   Petitioner appealed. On August 21, 2012, the California Court of Appeal dismissed the
18   appeal for petitioner's failure to obtain a certificate of probable cause as required under California
19   Penal Code section 1237.5. *See* Respondent's Exhibit A.

20   On December 12, 2012, the California Supreme Court denied the petition for review. *See*
21   Respondent's Exhibit B.

22   On January 21, 2014, petitioner filed a petition for writ of habeas corpus in the Napa
23   County Superior Court. Pet. at 4. On March 21, 2014, the Napa County Superior Court denied
24   the petition. *Id.*

25   On April 15, 2014, petitioner filed a petition for writ of habeas corpus in the California
26   Court of Appeal. *See* Respondent's Exhibit D. On April 17, 2014, the California Court of Appeal
27   denied the petition. *Id.*

28   On May 1, 2014, petitioner filed a petition for writ of habeas corpus in the California

1 Supreme Court. *See* Respondent's Exhibit E. On July 9, 2014, the California Supreme Court

2 denied the petition. *Id.*

3 On August 19, 2014, petitioner filed the instant federal petition. On November 10, 2014,

4 the Court issued an order to show cause.

5 The California Court of Appeal in its August 21, 2012 decision dismissing the second

6 appeal summarized the background relevant to the instant proceedings as follows:

> On December 19, 2000, appellant was charged in Napa County Superior Court case number CR102906 with attempted premeditated murder, arising out of his attack on another man in October 2000. We will refer to this case as the Napa attempted murder. On February 22, 2001, appellant was convicted of the Napa attempted murder charge, together with three enhancements.
>
> On March 3, 2001, while in custody awaiting sentencing in the Napa attempted murder case, appellant assaulted another inmate, breaking several bones in the victim's face and causing permanent injuries. As a result, on May 25, 2001, the Napa County District Attorney filed a criminal complaint, followed by an information, in Napa County Superior Court case number CR105153. This is the case from which this appeal ultimately arises. We will refer to this case as the Napa assault. The information filed in the Napa assault case charged appellant with assault by means of force likely to produce great bodily injury (Pen.Code, § 245, subd. (a)(1)), with a special allegation of personal infliction of great bodily injury resulting in a serious felony (§§ 12022.7, subd. (a); 1192.7, subd. (c)(8)). The information also included special allegations that appellant had suffered a prior conviction of a serious or violent felony (§ 667, subds.(b)-(i)), and a serious felony (§ 667, subd. (a)(1)), both of which were predicated on the Napa attempted murder conviction.
>
> While the charges were pending in the Napa assault, appellant was convicted of the Napa attempted murder, and on March 28, 2001, he was sentenced to an indeterminate term of life in prison with the possibility of parole, consecutive after a determinate term of 6 years for the enhancements. On June 20, 2002, we affirmed appellant's conviction and sentence in the Napa attempted murder. (*People v. Aitkens* (June 20, 2002, A094838) [nonpub. opn.].)
>
> While appellant was awaiting trial in the Napa assault, he was also awaiting trial in Placer County for arson causing great bodily injury (§ 451, subd. (a)), with an enhancement for use of an accelerant or delayed ignition device (§ 451.1, subd. (a)(5)). We will refer to this case as the Placer arson. In the Placer arson, appellant pleaded guilty, and was sentenced to 13 years in prison.
>
> Appellant was represented in the trial court in the Napa assault by Michael H. Keeley, an employee of the Law Offices of Mervin C. Lernhart, Jr. On January 17, 2003, appellant appeared in court with Keeley and entered a plea of no contest in the Napa assault. On a written plea form, appellant indicated that he was pleading no contest to the special allegations as well as to the assault. The plea was described on the form as an "open plea w[ith the] understanding that this matter will run consecutive to Placer Co[unty case number] 62–018203," i.e., the Placer arson. Under the terms of the plea, appellant retained his right to argue motions to strike his prior conviction and one of the enhancements under *People v. Superior*

3

*Court (Romero)* (1996) 13 Cal.4th 497. The plea agreement did not mention whether the sentence would be consecutive or concurrent with the sentence for the Napa attempted murder. The plea form indicated that the maximum potential prison term resulting from the plea would be four years in state prison, doubled on account of the prior strike conviction, plus three years in state prison based on the great bodily injury enhancement, plus five years in state prison based on the prior serious felony allegation.

As contemplated in the plea agreement, appellant later filed a motion to strike the prior serious felony conviction. In the same motion, he also requested the court to "impose one-third the term on the enhancements," including the enhancement alleged under section 667, subdivision (a)(1). On February 25, 2003, the court denied the motion to strike.

The court then heard argument on sentencing. The prosecutor stated that it was the People's position that the court should impose "an additional eight-year total to [appellant's] ongoing determinate sentencing time," including both the determinate sentence in the Placer arson "and the six years on the enhancements in our original case here," i.e., the Napa attempted murder. The prosecutor later repeated that appellant should receive "eight years consecutive to the ... determinate time he has to do in Placer County and the determinate time he has to do out of Napa County's sentence." Appellant's counsel, Keeley, concurred that "the agreement was that this case would be run consecutive to the other matters," using the plural. The only disagreement Keeley expressed with the prosecutor's proposal was to argue, consistent with his written motion, that the consecutive term on the enhancement for the prior serious felony under section 667, subdivision (a)(1), should be one-third the five-year term (that is, one year eight months), rather than the entire five years, thus yielding a total of four years eight months rather than eight years.

"After hearing the arguments of counsel, the trial judge agreed with the prosecutor that the five-year enhancement under section 667, subdivision (a)(1) had to be served in full, and accordingly ordered that appellant receive "an aggregate term of eight years." The prosecutor asked the judge to "clarify, this eight years is consecutive to our prison term?" and the judge responded, "Placer and here, it is.["]

Consistent with the transcript, the trial court's minute order and the abstract of judgment indicate that the court sentenced appellant to a term of eight years in state prison, consisting of the total of: (1) a base term of one-third the middle term (i.e., one year) for the assault, doubled to two years on account of the prior strike conviction; (2) one-third the middle term (i.e., one year) for the great bodily injury enhancement, to be served consecutively to the base term; and (3) five years for the prior serious felony allegation. The minute order provided that the enhancement terms were to be served consecutive to the base term, adding "and consecutive to CR102926" (i.e., the Napa attempted murder), and to the Placer County arson. In the abstract of judgment, however, in the space for listing incompleted sentences to which the sentence on the Napa assault was to be served consecutively, only the Placer County arson was listed.

On June 30, 2003, the Third District Court of Appeal reversed appellant's conviction for the Placer County arson, holding that one of the provisions of appellant's plea agreement was invalid. The case was remanded to the Placer County Superior Court to permit appellant to withdraw his plea if he chose to do so. (*People v. Aitkens* (June 30, 2003, C040589) [nonpub. opn.].)

On August 8, 2003, this court filed its opinion on appellant's direct appeal from the Napa assault. (*People v. Aitkens* (Aug. 8, 2003, A101969) [nonpub. opn.] (*Aitkens*

4

*I* ).) In *Aitkens I,* the attorney appointed to represent appellant on appeal filed a brief raising no issues and asking this court to review the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436. In our opinion, we held that the trial court did not abuse its discretion in denying appellant's motion for new counsel at the plea hearing, despite appellant's contention that Keeley had misinformed him in failing to advise him that the prosecutor intended to add a five-year enhancement for a prior serious felony conviction to the information, even if appellant waived his right to a preliminary hearing. (*Aitkens I, supra,* at pp. 2–3.)

On the issue of sentencing, we noted in *Aitkens I* that "[a]ppellant entered his plea with the understanding that the sentence in this matter would be a consecutive subordinate term to the term appellant already was serving" (*Aitkens I,supra,* at p. 2, fn. omitted] ), adding in a footnote: "Appellant already was serving both a determinate and an indeterminate sentence." (*Id.* at p. 2, fn. 2.) We characterized the sentence imposed by the trial court in that case as an "aggregate term ... total[ing] eight years in state prison to be served consecutively to the determinate portion of the sentence appellant was already serving." (*Id.* at p. 2.) We also noted that "[t]he [trial] court did not directly state how the eight-year term that it would impose was to be constructed," but opined that it was "clear from the transcript" that the sentence was as described in our opinion. (*Id.* at p. 3.)

On February 14, 2005, following the reversal and remand in the Placer arson, the trial court dismissed that case. On April 27, 2005, the attorney who represented appellant on appeal in the Napa assault sent a memorandum to the Napa County Superior Court informing it that the Placer County arson conviction had been "overturned on appeal and dismissed." The memorandum indicated that appellant needed to be resentenced as a result, because appellant's plea in the Napa assault was "pursuant to an understanding that sentence would run consecutive" to the sentences imposed on the Placer County arson and the Napa County attempted murder.

Apparently in response to this memorandum, the Napa County Superior Court held a hearing on May 18, 2005. Appellant was not present, but counsel appeared on his behalf, including both attorney Greg Galeste, who had represented appellant in the Napa attempted murder, and attorney Mervin C. Lernhart, Jr., the employer and supervisor of appellant's trial attorney in the Napa assault. The prosecutor and Galeste agreed that no change was necessary in appellant's sentence in the Napa attempted murder, and the matter was dropped from the calendar. With respect to the Napa assault, Lernhart reported that appellate counsel was concerned that appellant could lose the benefit of his plea bargain, under which he received a subordinate term consecutive to the Placer arson, due to the reversal of the latter. Both the prosecutor and Lernhart agreed, however, that despite the reversal, appellant's sentence in the Napa assault would still run consecutively to his sentence in the Napa attempted murder, and the result would be the same. The court expressed the view that appellant might wish to do something with this case now that [the] Placer [arson] no longer exists as a term of imprisonment," but indicated that it would be "up to [appellant] to initiate those proceedings." Accordingly, the court reappointed Lernhart and suggested that he consult with appellant and determine whether to put the matter on the court's calendar for further proceedings, with appellant present. Lernhart agreed to do so. The prosecutor reiterated that the sentence for the Napa assault should be served consecutive to the Napa attempted murder, but the court indicated that it would "leave it up to [appellant]" and that it was "up to him whether he thinks something needs to be done now."

Our record does not reveal whether Lernhart or appellant took any action in the

5

wake of the May 18, 2005 hearing. Almost six years later, however, on April 8, 2011, an employee of the California Department of Corrections and Rehabilitation sent a letter to the trial judge in the Napa assault case indicating that the abstract of judgment and/or minute order in the case might be incomplete or in error. The letter acknowledged that appellant had been given a base term of one-third the middle term (doubled) for the Napa assault, and one-third the term for one of the enhancements, because appellant's sentence was consecutive to the sentences in the Placer arson and the Napa attempted murder. In the wake of the dismissal of the Placer arson, the letter opined that under California Rules of Court, rule 4.451, the court should impose the *full* terms for the Napa assault and for its enhancement, to be served consecutive to the indeterminate term imposed in the Napa attempted murder.

The trial court held a hearing on the resentencing issue in the Napa assault on September 23, 2011 (the resentencing hearing). At the resentencing hearing, appellant was again represented by Lernhart. Lernhart reported to the court that he had examined the files in the Napa assault and the Napa attempted murder, and expressed the opinion that "when the Placer [arson] case went away, that did not undo the order that the [Napa assault] case run consecutive with the other Napa case" (that is, the Napa attempted murder). Lernhart concluded that he did not see any basis for a modification of appellant's sentence, but informed the court that appellant wished to withdraw his plea, which appellant confirmed.

Appellant raised three reasons for seeking to withdraw his plea: (1) the plea waiver form appellant signed did not state that his sentence in the Napa assault would be consecutive to the Napa attempted murder, but only to the Placer arson; (2) the form did not have a check in the box notifying appellant that he would not be eligible for probation based on the plea (although the form did indicate appellant's admission of strike enhancements which had that effect); and (3) appellant contended Keeley told him his violent felony prior under section 667, subdivision (a)(1) would result in an additional term of one-third of five years, when in fact it resulted in an additional term of the full five years. Appellant contended that as a result of these errors, he did not enter a knowing and intelligent plea, and was deprived of the benefit of his plea bargain. Appellant also contended that at the time of sentencing, "he didn't really understand what was going on," and that was why he failed to object at the time.

After placing these issues before the court, Lernhart explained to the court that he himself was actually the attorney appointed to represent appellant in the Napa assault case. Lernhart had assigned the case to Keeley, his associate, and worked with him on it. Thus, Lernhart believed he "would have a conflict of interest that would amount to an impairment of [appellant's] right to have an objective review of ... whether or not he should be able to withdraw his plea." Accordingly, he asked that if the court were "inclined to proceed along those lines," he be relieved of the representation. Appellant agreed with him, adding that he believed he "should probably be appointed different counsel, somebody that could be more objective," because he felt he had been improperly represented due to the difference between the eight-year sentence he received for the Napa assault, and the sentence of four years eight months that he had expected.

The trial judge denied the motion to withdraw the plea, opining that he no longer had jurisdiction to entertain such a motion, given the passage of time. He added that even if he did have jurisdiction, he did not see any basis to grant the motion on any of the grounds that had been stated, nor did he see any basis to appoint counsel to investigate further.

6

> On the issue of modifying the sentence, the trial judge concluded that "to effectuate the plea agreement," which involved a base term of one-third the middle term, the sentence in the Napa assault would "still have to be consecutive to something." Lernhart agreed, and pointed out that the minute order in the Napa assault expressly provided that the sentence on the enhancements would be consecutive to the Napa attempted murder. Accordingly, the trial court ordered the abstract of judgment modified to delete the reference to the Placer arson, and in its place, to indicate that the sentence in the Napa attempted murder would be the one to which the sentence in the Napa assault was to be served consecutively. The court did not change the base or enhancement terms originally imposed for the Napa assault. Lernhart stated he did not object to this ruling.

*People v. Aitkens*, No. A133513, 2012 WL 3578652, at *1-5 (Cal. Ct. App. Aug. 21, 2012) (footnotes omitted).

## II. DISCUSSION

### A. Standard of Review

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state courts adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Additionally, habeas relief is warranted only if the constitutional error at issue "had substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme]

7

Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 405-06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

**B.     Petitioner's Claims**

Petitioner asserts the following grounds for relief: (1) at the resentencing hearing in the Napa assault case, the trial court imposed a sentence that violated the terms of his plea agreement; and (2) appellate counsel rendered ineffective assistance by failing to raise the above claim on appeal.

**1.     Plea Agreement**

Petitioner claims that "the state re-sentenced petitioner in a manner contrary to the literal and explicit terms of his plea contract/agreement." Pet. at 6(i). Petitioner specifically contends:

> On or about 23 September, 2011, the Napa County Superior Court re-sentenced Aitkens on the Napa assault. The re-sentencing Court, however, then substituted into the place of the overturned and dismissed Placer arson case—over the objections and efforts of Aitkens to withdraw his plea—Aitkens' Napa County attempted murder case (Case No. CR-102906). The re-sentencing Court ordered the original Abstract of Judgment modified to delete the reference to the Placer arson case, and in its place, substitute the Napa attempted murder case to which the sentence on the Napa assault would run consecutively.
>
> But-for the promises, inducements or considerations by the prosecuting attorney and endorsed by the court—that the Napa assault sentence would run consecutively

8

to only the Placer arson—Aitkens would never have entered into nor agreed to any plea agreement on the Napa assault case; never have waived his constitutional rights associated with trial.

Of course, the promises, inducements or considerations offered by the prosecutor, as endorsed by the sentencing court, could not, on re-sentencing, be fulfilled because the Placer arson case had been overturned and dismissed; the plea contract agreement was no longer valid, it was void. The re-sentencing court could not comply with the literal terms of the plea contract/agreement but, instead, re-sentenced Aitkens contrary to the explicit terms, thus rendering Aitkens' plea involuntary.

Pet. at 6(ii)-6(iii).

### a. State Court Opinion

The Napa County Superior Court, in its March 21, 2014 opinion on state habeas, was the highest court to have reviewed this claim. It is the Napa County Superior Court's opinion that this Court reviews herein. *See Ylst v. Nunnemakker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). The court resolved the claim as follows:

Contrary to petitioner's core argument, the plea agreement does not "literal[ly] and explicit[ly]...require[] that the sentence on the Napa assault run consecutively only to the Placer arson case" and no other. (Petition, p. 3(i) of 6.) In fact, the plea was described on the plea form as an open plea with the understanding that the sentence will run consecutive to Placer County case number 62-018203 (the Placer arson case). The plea agreement does not include the word "only," and it does not mention whether the sentence would be consecutive or concurrent with the sentence for the Napa attempted murder. In sum, there is nothing in the plea agreement itself, or in the supporting documents that petitioner has filed, or in any authority that petitioner has cited, that would preclude a court from modifying petitioner's original sentence after the Placer arson case was dismissed. Nor has petitioner cited any authority that his original sentence became "void" upon the dismissal of the Placer case. Further, to the extent the petition would require the court to re-determine sentencing-related facts, relief is not available. (*In re Harris* (1993) 5 Cal. 4th 813, 839-841.)

Finally, the arguments petitioner makes in this petition were raised and rejected on petitioner's direct appeal in the court of appeal's opinion filed in August 2012. (See petitioner's exhibit E [opinion of the First District Court of Appeal, A133513, filed August 21, 2012, at pp. 11-12].) The court of appeal's opinion states, in part, as follows:

> Nothing on the plea form indicates appellant was promised anything in this regard one way or the other. It is clear from the transcript and minute order of the original sentence, however, that both appellant's trial counsel and the trial court understood that the Napa assault sentence would run consecutively to both of the other cases. Any claim appellant may have that this provision of his *original* sentence did not comply with the plea agreement could and should have been raised in his direct appeal.

Further at page 11, the court of appeal stated, "We explain our reasoning here in

order to forestall any future effort to raise the same claims, which have already been fully briefed in this court. . . ."

Respondent's Exhibit E, Dkt. No. 7-7, at 46-47.

### b. Legal Standard

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Plea agreements are contractual in nature and subject to contract law standards of interpretation. *In re Ellis*, 356 F.3d 1198, 1209 (9th Cir. 2004). The construction of a state court plea agreement is governed by state contract law, and the federal court should not disturb a reasonable state court interpretation. *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987); *Buckley v. Terhune*, 441 F.3d 688, 695 (9th Cir. 2006) (en banc) (quoting *Ricketts* at 6 n.3) ("the construction and interpretation of state court plea agreements 'and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law'"). If, however, a state court fails to apply state contract law, its decision is "contrary to" *Ricketts* for purposes of § 2254(d)(1). *Buckley*, 441 F.3d at 696-97.

Under California law, in determining whether a plea agreement has been broken, courts must first "look to the plain meaning of the agreement's language." *Buckley*, 441 F.3d at 695 (citing Cal. Civil Code §§ 1638, 1644). Second, if that language is ambiguous, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Id.* (citing Cal. Civil Code § 1649). "Although the intent of the parties determines the meaning of the contract, the relevant intent is objective—that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent." *Id.* (quoting *Badie v. Bank of America*, 67 Cal. App. 4th 779, 802 n.9 (1998)). "This inquiry considers the disputed or ambiguous language in the context of the contract as a whole and of the relevant surrounding circumstances." *Id.* at 698 (citing *Nissel v. Certain Underwriters at Lloyd's of London*, 62 Cal. App. 4th 1103, 1111-12 (1998)). If ambiguity still remains, the contract is construed against the party who caused the uncertainty to exist. *Id.* at 695-96 (citing Cal. Civil Code § 1654).

### c. Analysis

The state superior court examined the trial record and rejected petitioner's claim. Further,

although the claim was not directly raised in the state appellate court, the appellate court nonetheless considered the issue *sua sponte* and made factual findings rejecting petitioner's assertions that the plea agreement was breached. Specifically, the state appellate court found: "It is clear from the transcript and minute order of the original sentence . . . that both appellant's trial counsel and the trial court understood that the Napa assault sentence would run consecutively to both of the other cases." *People v. Aitkens*, 2012 WL 3578652 at *6.[2]

Based on a review of the record, it cannot be said that the state courts' rejection of petitioner's claim was contrary to or an unreasonable application of Supreme Court precedent or was objectively unreasonable in light of the evidence presented. As noted by the state superior court, the plea form never used the word "only" with respect to the Placer arson conviction. *See* CT at 87-89. The form was silent as to how the determinate term on the Napa attempted murder conviction fit into the sentence. The state court could have reasonably found on that basis alone that there was no agreement on that point between the prosecutor and the defense.[3] Alternatively, the state court could have reasonably found that the language of the plea form was ambiguous given that the underlying sentence had to be either consecutive to or concurrent with the Napa attempted murder sentence. Assuming the state court found ambiguity[4], it was proper for the state court to consider the original sentencing transcripts as the "relevant surrounding circumstances" to resolve such ambiguity. *Buckley*, 441 F.3d at 698. At the February 25, 2003 sentencing, the prosecutor stated his position that the court should impose "an additional eight-year total to [petitioner's] ongoing determinate sentencing time," clarifying that the sentence would include "13 years from Placer County and the six years on the enhancements in our original case *here*, which he now has 19 years, adding another eight years would be a total of 27 years."

---

[2] The sole issue before the state appellate court in petitioner's second appeal was whether the resentencing court violated petitioner's right to effective assistance of counsel by failing to appoint substitute counsel to represent petitioner in connection with his motion to withdraw his plea. *See People v. Aitkens*, 2012 WL 3578652 at *5. The court nonetheless addressed petitioner's argument that the plea was involuntary "in order to forestall any future efforts to raise the same claims." *Id.* at *6.

[3] This appears to be the approach taken by the Napa County Superior Court on state habeas.

[4] This appears to be the approach taken by the state appellate court on petitioner's second appeal.

11

Respondent's Exhibit J at 1157 (Reporter's Transcript, hereinafter referred to as "RT") (emphasis added). The prosecutor later summed up that the court should impose "a total of eight years consecutive to the concurrent—sorry, the determinate time he has to do in Placer County *and the determinate time he has to do out of Napa County's sentence.*" RT at 1161 (emphasis added). Counsel for petitioner concurred, stating "[M]y client . . . understands that he'll be responsible for restitution and the agreement was that this case would be run consecutive to the other *matters*," using the plural. RT at 1162 (emphasis added). After the court imposed the eight-year term, the prosecutor asked the judge, "[M]aybe we just ought to clarify, this eight years is consecutive to our prison term?" RT at 1164. The judge responded, "Placer *and here*, it is." *Id.* (emphasis added). These colloquies make clear that the "the promisor," here the prosecutor, believed at the time of making the plea agreement that "the promisee," here petitioner, understood his sentence would run consecutive to the sentences on both the Napa attempted murder and the Placer arson. *See Buckley*, 441 F.3d at 695. In sum, extrinsic evidence cured any ambiguity in the plea form, supporting the state courts' rejection of this claim.

Further, even assuming the state courts erred, petitioner cannot show the error had "substantial and injurious effect" on his sentence as required by *Brecht*, 507 U.S. at 637. *See Buckley*, 441 F.3d at 697 (applying the *Brecht* harmless error rule to the law of contractual plea agreements). Specifically, even if the state courts had ruled in petitioner's favor and he had been permitted to withdraw his plea, the end result would have been a trial on the original Napa assault charges or the negotiation of a new plea agreement. Due to the prior strike and prior serious felony conviction, both of which were predicated on the Napa attempted murder (*see* CT at 32), as well as the ample evidence for the charges against petitioner (*see* CT at 103), it is unlikely that a new trial or new plea deal would have resulted in a sentence shorter than the one he received. Indeed, petitioner acknowledged on his plea form that he faced a maximum possible term of sixteen years on the Napa assault. *See* Pet. Exhibit A. Finally, the new sentence would have to run consecutive to something. Thus, even if petitioner had succeeded in withdrawing his plea, whatever new sentence he ended up with would run consecutive to the Napa attempted murder, which is precisely the status of his current sentence.

Accordingly, petitioner is not entitled to habeas relief on this claim.

### 2. Ineffective Assistance of Counsel

Petitioner claims appellate counsel was ineffective for failing to raise "the most obvious and substantial issue—the constitutionally violative re-sentencing of Aitkens." Pet. at 6(iv).

#### a. State Court Opinion

Here, the California Supreme Court, on state habeas, summarily denied the claim. Where, as here, the state court decision is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state court decision is objectively reasonable. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This "[i]ndependent review . . . is not de novo review of the constitutional issue, but rather, the only method by which [a federal court] can determine whether a silent state court decision is objectively unreasonable." *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

#### b. Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but "effective" assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment claim based on ineffectiveness of counsel, a petitioner first must establish such counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-88. Second, the petitioner must establish prejudice resulting from his counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

A federal habeas court considering an ineffective assistance claim need not address the prejudice prong of the *Strickland* test "if the petitioner cannot even establish incompetence under

the first prong." *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). Conversely, the court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant effective assistance of counsel on his first appeal. *Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set in *Strickland*. *See Strickland*, 466 U.S. at 668; *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). A petitioner thus must show his counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. *Miller*, 882 F.2d at 1434 & n.9.

Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a criminal defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). "[T]he weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." *Miller*, 882 F.2d at 1434. Consequently, where appellate counsel "decline[s] to raise a weak issue," he or she will "frequently remain above an objective standard of competence" and, for the same reason, will have caused his client no prejudice. *Id.*

A "doubly" deferential judicial review applies in analyzing ineffective assistance of counsel claims under 28 U.S.C. § 2254. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1410-11 (2011). The rule of *Strickland*, i.e., that a defense counsel's effectiveness is reviewed with great deference, coupled with AEDPA's deferential standard, results in double deference. *See Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010). Put another way, when § 2254(d) applies, "the question is not whether counsel's actions were reasonable[;] [t]he question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *See Richter*, 562 U.S. at 105. Moreover, because *Strickland*'s standard for assessing defense counsel's effectiveness is a "general" one, state courts have "greater leeway in reasonably applying [that] rule," which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *See Cheney*, 614 F.3d at 995 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

      **c. Analysis**

Here, petitioner contends that his appellate counsel failed to raise a claim that his plea was violated through resentencing. For the reasons discussed above in connection with petitioner's first claim, the argument would not have succeeded on appeal. Indeed, as also discussed above, the state appellate court considered the claim tangentially and specifically rejected it. *See People v. Aitkens*, 2012 WL 3578652 at \*6. Appellate counsel therefore cannot be faulted for declining to raise the claim. *See Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) ("[A]ppellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal.")

Further, even if petitioner has shown error, no prejudice has been shown. Even if appellate counsel had argued that petitioner's resentencing violated his plea agreement, and assuming this argument prevailed, the end result would have been the same or worse for petitioner for the reasons discussed above in connection with petitioner's first claim. Indeed, petitioner concedes that counsel communicated to petitioner that she would not raise the issue of a plea violation "because to prevail on the issue might well subject [petitioner] to greater punishment upon a retrial of the original assault charge." Traverse, Ex. A at 5. This does not demonstrate incompetence, but is instead a sound tactical choice.

Accordingly, petitioner is not entitled to habeas relief on this claim.

**C.     Certificate of Appealability**

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

### III. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of respondent and close the file.

Additionally, the Clerk is directed to substitute Warden Ron Davis on the docket as the respondent in this action.

**IT IS SO ORDERED.**

Dated: 10/7/2015

                                                                          _____
HAYWOOD S. GILLIAM, JR.
United States District Judge